STATE OF MAINE                                                SUPERIOR COURT
Penobscot, ss.                                               Civil Action
                                                             Docket No. RE-99-015

FILED AND ENTERED
SUPERIOR COURT

APR 28 2000

PENOBSCOT COUNTY

FCM-PEN-4/28/2000

RICHARD  HARMON  d/b/a
RDH  CONTRACTORS,

         Plaintiff

v.                                           **ORDER  AND  DECISION**

KRAB  COMPANY,

         **Defendant**


     The Plaintiff, Richard Harmon, is a builder with some 20

years experience having built more than 20 houses both in the

Millinocket area and in Connecticut.  He was working privately for

Andy Nadeau, one of the partners in KRAB Company, and learned that

Mr. Nadeau and his three partners were planning a new building in

Millinocket.

     The primary person acting for KRAB Company was Kathy

Kenneson.  She was interested in expanding her business. Her plan

was to have her own building including a "loft".

     It was in the fall of the year when it was decided to build

and the parties wanted the building completed before the end of

the year.  Time was of the essence; the Plaintiff was well aware

of that.

     The Defendant, through Ms. Kenneson, talked with a number of

building contractors and of the three who submitted proposals, at

least orally, Plaintiff was some $15,000 cheaper.  The parties

conferred and produced a writing, executed by both, which is in

evidence as Plaintiff's Exhibit No. 1.  Although it purports to be

a contract between the "Katahdin General Store and RDH

Contractors", it was signed by Ms. Kenneson and as well by Plaintiff. It is clear that the designation of the owner -- Katahdin General Store -- was irrelevant and in fact the real party in interest to which the contract related was KRAB Company, a partnership.

The contract was sketchy and made no provisions for a number of important things which became problems as time passed. Plaintiff put together some plans which are presently in evidence as Plaintiff's Exhibits No. 2, 3 and 4, which show both the original building as it was conceived by the parties and the way it was revised as a result of the State Firemarshall's activity reflected by Permit No. 9714 which is in evidence as Defendant's Exhibit No. 1. It is to be noted that the permission for the construction permit from the Firemarshall was given to Kathy Kenneson and related to Creative Paper & Gifts.

This Court finds as a fact that the necessary building permits required by the Town of Millinocket were obtained by Plaintiff in the ordinary course of his understanding of his obligation and the Court further finds that the requirement for the Firemarshall's intervention had an unclear source and was a surprise to both Plaintiff and Defendant as well as the Town of Millinocket. It was a mutual mistake of fact proved by clear and convincing evidence. It related to the boiler room and interfered with the building design as originally contemplated. It led to additional expense.

The building design called for a large first floor area and a

second floor which would contain a bath. Although Defendant makes much of the fact that the access to the second floor was a stairway and that the bathroom was handicapped accessible, that issue is irrelevant in the Court's view. Simply stated, the bathroom did meet handicap access standards as was required by the Town of Millinocket, but handicap access to the floor on which the facility was located was not called for.

Defendant's Exhibit No. 7 made it clear that the parties contemplated rapid building with completion occurring by December 15, 1998. The Court finds that the 30 x 80 foot building was completed with a second story. The contract contained no express definition of what was meant by the word "loft". The parties had a mutual misunderstanding about what was intended. Indeed, Kathy Kenneson's ideas were never made clear to the Court.

The plans for the second floor are in evidence as Plaintiff's Exhibit No. 4 and show proposed construction which the Court finds was completed by Plaintiff in accordance with that plan. It did not meet the expectations of Defendant or at least Kathy Kenneson, but that was not a major problem at first. That is, each of the parties understood as construction progressed that the form would comport with Plaintiff's Exhibit No. 4 as it related to the second floor. Accordingly, the Court finds that the building erected was consistent with the writings of the parties and that there was, at a minimum, a subsequent acquiescence by Defendant to the building as it was finally structured.

There was a late charge penalty of $300 per day which

Plaintiff testified did not come into play because he had completed his work on December 15th. He worked through the late evening hours of December 14th and left the building substantially complete and cleaned. This condition is corroborated by Sue Call who helped clean the building and it is not seriously disputed by Kathy Kenneson.

As a result of the events that led to the requirement for obtaining the fire permit in evidence as Defendant's Exhibit No. 1, the parties encountered additional expenses. Those are reflected on the second page of Plaintiff's Exhibit No. 6.[1] It is clear that the second page of Plaintiff's Exhibit No. 6 was written by Plaintiff and discussed with Defendant by Plaintiff. That fact is corroborated by Defendant's Exhibit No. 6, as well as from the testimony. Although there were extras in the amount of $6,804.87 as shown by the second page of Plaintiff's Exhibit No. 6, Plaintiff requested his final payment of $5,000 and asked for $3,200 as a credit for extras against the $6,807. The KRAB Company denied that request but did agree to pay the $5,000 when the project was completed and, as well, to pay some money towards the overage list. The first page of Plaintiff's Exhibit No. 6 describes what it was that Defendant agreed to be responsible for. That amount was $654.05, and is shown on Plaintiff's Exhibit No.

---

1. The second page of Plaintiff's Exhibit #6 was not a part of the original writing running from Krab Company to Richard Harmon. It was added to the first page at trial and both pages were admitted. That joinder was explained on the record and is of no consequence.

6.

It is abundantly clear that the $5,000 was owed and the Court finds that there was no basis for Defendant's not having paid that amount. The Court also finds that, at a minimum, the $5,654.05 should have been paid as a result of Defendant's agreement. The project was substantially complete and the disagreement Defendant raised relating to lien waivers, was overstated and was not grounds for avoidance of the payment[2].

The issue of the paving shown by Plaintiff's Exhibit No. 5 is an example of the way in which the parties interrelated. The Plaintiff paid that charge and now no longer seeks to recover it, even though it is shown as a portion of the $6,804.87 which he claims were extras. The evidence does not disclose what the source of the $3200 was but the Court finds that the second page of Plaintiff's Exhibit #6 shows sufficient evidence, it was not challenged by Defendant, to support the claim of $3200.

The Defendant complains, by counterclaim, about what it considers to be faulty workmanship. With respect to the paving which did sink in the springtime, the Court finds for the Plaintiff. The Court also finds that the work which was done was so as to make the site satisfactory by the 15th of December and that there was or should have been an awareness on the part of the Defendant that additional paving would have to be done in the

---

[2] It is worthy of note that the Plaintiff overreacted to events. He sought legal services which resulted in this lawsuit and that has also delayed his payment.

spring. That paving was not a portion of the contract except as there was an implied condition that the Plaintiff would make the premises accessible to the handicapped through the front door.

Further, Krab Company complains about some items which it suggests require extensive repair and primarily that relates to the vinyl siding. There is no question but that the vinyl siding was installed improperly. Plaintiff's testimony infers that he believes the matter could be corrected easily. That is disputed by Defendant's witness, Dennis West.

The problem derives from the vinyl lengths being too long thereby requiring cutting to reduce the length of the pieces and necessitates renailing. The question is how serious the problem actually is. The Court does not accept either view. The Court does not find Defendant is entitled to re-side the building.

More importantly, the Court also finds that Defendant failed to mitigate its damages. The Plaintiff's testimony was that the cost of repair of.the vinyl siding would be something in the area of $300 but the Court does not agree with that suggestion either. It is probable, and the Court so finds, that the cost of repair will substantially exceed that amount but it is not the Court's view that the damages requested in the amount of $4,500 for re-siding is appropriate.

The Court finds that Defendant should receive **$1,500** for the purposes of repair of the vinyl siding. That finding is based on the fact Krab Company did not mitigate its damages as required by law when the condition first became apparent. At that time the

condition of the vinyl would have been better and the problems testified to by Mr. West could have been more easily avoided.

The Court also finds that during the repair of the vinyl it would be possible to redo the "J" channels above the windows and awards the Defendant **$200** as the cost of the remedial work for that.

Defendant also maintains that damages to it occurred as a result of the leaking that occurred in the roof. As to that the evidence is insufficient to justify a finding for Defendant and no award of damages is made. There has clearly been some activity on the roof and the condition about which the Defendant complains did not appear during two winters; that is, the winter of 1998 and the winter of 1999 to date. Defendant's witness, Kathy Kenneson, discovered the roof leaks according to her testimony only a month or so ago "I think". The problem does not appear to be serious and there is no evidence to find that the Plaintiff is responsible for damages.

On the issue of the charge back, the Court finds for Plaintiff. This Court finds as a fact that the work was done in a timely fashion by Plaintiff and in accordance with his contract. The complaints which Defendant makes, especially about the lighting, seems to be their own responsibility. See Defendant's Exhibit No. 7 which says: ". . . completed (see attached sheet) not to include, lights or paint." (Emphasis added.)

With regard to electrical work, there is no evidence supporting the inference sought to be generated by Defendant that

there is a problem. There is no evidence of what Kathy Kenneson means when she says the lights "flicker". The evidence is limited to that statement. Therefore, no damages can be awarded for that.

The Court finds that the request of Plaintiff for $8,200 is reasonable under the circumstances except for the damages noted and Judgment is to be entered for Plaintiff on the Complaint in the amount of $8,200, and on the Counterclaim for Defendant in the amount of $1,700 for the repair to the vinyl siding and windows

The Order will be: **Judgment to Plaintiff in the amount of $6,500.**

The Clerk may incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

So Ordered.

Dated: April 27, 2000

_____
Francis C. Marsano, Justice
Superior Court

Date Filed __4/2/99__    __PENOBSCOT__    Docket No. __RE-99-15__

County

Action __CIVIL - MECHANICS LIEN__

Assigned to Justice Francis C. Marsano

RICHARD HARMON, dba RDH                    KRAB COMPANY
CONTRACTORS

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Peter K. Baldacci, Esq. <br> 46 Main Street , PO Box 1718 <br> Bangor, Maine .04402-1718 | Tanous & Snow <br> 143 Penobscot Avenue <br> PO Box 789 <br> Millinocket, Maine 04462 <br> BY: Nolan H. Tanous, Esq. |

| Date of Entry | |
|---|---|
| 4/2/99 | Complaint Filed. (Exhibits "A" "B" Attached Filed) |
| 4/2/99 | Clerk's Certificate Filed. Certified copy forwarded to Penobscot County Registry of Deeds. |
| 4/12/99 | Acknowledgment of Receipt of Summons and Complaint filed by Nolan H. Tanous Esq. for Defendant KRAB COMPANY. (4/8/99). |
| 4/15/99 | Affirmative Defenses, Answer and Counterclaim to Plaintiff's Complaint Filed. |
| 4/23/99 | Pretrial Scheduling Statement filed by Plaintiff. |
| 4/28/99 | Reply To Counterclaim Filed by Plaintiff. |
| 4/29/99 | Expedited Pretrial Order Filed. Discovery to be closed by 6 months This case will be placed on the non-jury trial list 30 days after close of discovery. This Order is incorporated into the docket by reference at the specific direction of the court. (Pierson,J) Copy forwarded to all attorneys of record. |
| 5/26/99 | Notice of Discovery Service Filed. Papers served by counsel for Plaintiff on Nolan H. Tanous, Esq.,on 5/25/99. Papers served, Notice to Take Oral Deposition of Kathy Kenneson and Notice to Take Oral Deposition of Adrian Nadeau, Jr. |
| 6/17/99 | Notification of Discovery Service filed by Defendant, Answer to Request for Production of Documents. |
| 12/7/99 | Pursuant to Administrative Order, Single Justice Assignment of Civil cases Docket No. SJC-323 effective January 1, 2000, this case assigned to Justice Francis C. Marsano. Copy forwarded to attorneys and pro se parties of record. |